UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OLIVE EDWIGE ANDERSON,<br>Petitioner,<br>v.<br>BRUCE SCOTT, *et al.*,<br>Respondents. | CASE NO. 2:26-cv-02681-GJL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Olive Edwige Anderson ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at 2; Dkt. 9 at 3. On July 29, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody.[1] Dkt. 1 at 10.

Respondents to the Petition include Markwayne Mullin (Secretary of the United States Department of Homeland Security ("DHS")) and Bruce Scott (Warden of the NWIPC) (collectively "Respondents").

[1] The parties have consented to proceed in this action before a United States Magistrate Judge. Dkt. 7.

On July 30, 2026, the Court ordered Respondents to show cause why a writ of habeas corpus should not be granted. Dkt. 5. On September 3, 2026, upon review of Respondents' Return (Dkt. 9) and Petitioner's Second Amended Traverse (Dkt. 19), the Court ordered the parties to submit supplemental briefs to address (1) whether the Court retains jurisdiction to grant habeas relief upon Petitioner's claims that her due process rights were violated when Respondents attempted to affect third-country removal without notice and/or an opportunity to be heard; (2) whether detention premised on effectuating removal to a third-country for which Petitioner has not been afforded due process is unconstitutional; and (3) briefly, whether Petitioner was previously detained and/or subject to any form of governmental supervision as a result of her immigration status prior to her current detention. Dkt. 25 at 6.

Having considered the Parties' submissions,[2] the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) and **ORDERS** Petitioner be provided a prompt, individualized, reasonable fear interview as set forth in the conclusion below.

## I. FACTUAL BACKGROUND

Petitioner Olive Edwige Anderson is a native and citizen of Benin. Dkt. 1 at 2. She entered the U.S. in 2005, over twenty years ago, and eventually applied for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* On April 10, 2012, an Immigration Judge ("IJ") ordered Petitioner removed to Benin, but also granted Petitioner withholding of removal. Dkt. 10 at ¶ 11; Dkt. 12-4 at 2. The IJ denied Petitioner's applications

[2] Upon review, the Court discovered Petitioner's attorney cited cases in the Petition, Dkt. 1 at 6, 9, and Petitioner's Supplemental Brief, Dkt. 26 at 6–7, which appear to be nonexistent or contain significant inaccuracies. Such inaccuracies indicate potential generative AI hallucinations. *The Court did not rely on any arguments for which the cases were inaccurately cited in support.* The Court will address this issue by separate order to avoid delaying the instant relief and to ensure Petitioner's liberty interests are promptly addressed.

for asylum and protection under the Convention Against Torture. *Id.* Petitioner was never detained nor released under any supervisory order. Dkt. 26 at 4–5.

Petitioner remained in the United States and is now married to a U.S. citizen, who is a disabled veteran. Dkt. 1 at 3. Together, they have a four-year-old child. *Id.* Petitioner is the primary caregiver for her husband and child. *Id.* She has also owned and operated a successful business for approximately ten years and employs multiple individuals. *Id.*; Dkt. 2 at 2.

In July 2026, Respondents began to pursue Petitioner's removal to a third country, Ghana, without any notice to Petitioner. Dkt. 10 at ¶ 12; Dkt. 1 at 3. On July 23, 2026, during a targeted immigration enforcement operation, ICE arrested and detained Petitioner without notice and without opportunity for Petitioner to contest Respondents' actions. Dkt. 1 at 3; Dkt. 10 at ¶ 13. Shortly thereafter, ICE informed Petitioner that she would be transferred to Texas and removed to Ghana by July 30, 2026. Dkt. 1 at 3.

On July 29, 2026, Petitioner filed a Motion for Temporary Restraining Order, requesting the Court enjoin Respondents from removing or transferring Petitioner out of this District. Dkt. 2. This Court granted the Motion shortly thereafter to preserve the status quo and prevent immediate harm pending further litigation in this matter. Dkt. 4 at 2.

According to Respondents, they scheduled Petitioner for removal by charter flight to Ghana on July 30, 2026, but "due to this Court's order staying Petitioner's removal, Petitioner was not included on the flight." Dkt. 10 at ¶ 14. Respondents further state that "ICE intends to remove Petitioner to Ghana promptly, absent an order staying Petitioner's removal[,]" and to effectuate her removal, they will "follow the March 30th, 2025 memorandum of former DHS Secretary Kristi Noem, *Guidance Regarding Third Country Removals*[.]" Dkt. 9 at 3; Dkt. 11 at ¶ 9.

Petitioner claims she was "not afforded any meaningful opportunity to challenge her detention or removal, was not provided notice of the legal basis for Respondents' actions, did not sign any paperwork authorizing her removal, and was given no opportunity to assert fear of removal or otherwise seek protection before Respondents scheduled her deportation." Dkt. 1 at 3–4. Further, she was not advised of "any opportunity to seek protection from removal to Ghana, or otherwise provided any mechanism for her to invoke the protections afforded by law before attempting to remove her to a third country." Dkt. 13 at 3.

On August 20, 2026, Petitioner's counsel sent a letter to Respondents specifically requesting that DHS provide Petitioner the opportunity to seek protection from removal to Ghana through the procedures governing third-country removal before removal occurred. Dkt. 27 at 6–7. Respondents denied the request, stating that Petitioner "will not be referred for a fear screening" pursuant to its March 30, 2025, *Guidance Regarding Third Country Removals*.[3] Dkt.

---

[3] ICE's third country removal policy—and its procedural history—to which Respondents refer is thoroughly described in *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1065–66 (W.D. Wash. 2025), as follows:

> In March 2025, the District of Massachusetts entered a temporary restraining order enjoining ICE from "[r]emoving any individual subject to a final order of removal from the United States to a third country, *i.e.*, a country other than the country designated for removal in immigration proceedings" unless certain conditions were met. *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 942948, at *1 (D. Mass. Mar. 28, 2025), *appeal dismissed*, No. 25-1311, 2025 WL 2720812 (1st Cir. June 30, 2025).
>
> On March 30, 2025, the Department of Homeland Security ("DHS") issued updated guidance on third country removals. Dkt. No. 4-1. The guidance states that noncitizens may be removed to a third country without notice or other "further procedures" if the country has given diplomatic assurances that individuals "removed from the United States will not be persecuted or tortured" and the Department of State deems those assurances credible. *Id.* at 2–3. If the country has not provided assurances (or the assurances are deemed incredible), DHS will notify the noncitizen of its intent to remove them to the third country but "will not affirmatively ask whether the [noncitizen] is afraid of being removed" there. *Id.* Only if the noncitizen affirmatively expresses a fear of removal will the officer refer them to United States Citizenship and Immigration Services ("USCIS") for a screening interview to assess eligibility for withholding of removal or CAT protection. *Id.* at 3. If USCIS determines the noncitizen likely qualifies for protection, it will refer the matter to the immigration court or to ICE, depending on the circumstance. *Id.* And if the referral is to ICE, rather than to the immigration court, ICE may either move to reopen the noncitizen's removal proceedings "for the sole purpose of determining eligibility for protection" or it may designate a different country of removal. *Id.*

27 at 9. Respondents instead stated that they "have diplomatic assurances from Ghana [that] third-country nationals will not be persecuted nor tortured and assurances have been deemed credible by the State Department." *Id.*

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, a habeas petitioner must prove by the preponderance of the evidence that he is "in custody in

---

> Weeks after this guidance was issued, the district court in *D.V.D.* certified a plaintiff class and issued a class-wide preliminary injunction establishing procedures DHS and ICE had to follow before removing noncitizens to a third country. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 394 (D. Mass. 2025); *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (memorandum offering more guidance on compliance with the preliminary injunction). The United States Supreme Court stayed the preliminary injunction without explanation pending appeal in the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, —— U.S. ——, 145 S. Ct. 2153, 222 L.Ed.2d 1109 (2025).
>
> On July 9, 2025, following the Supreme Court's stay, ICE issued guidance to its agents reinstating the March 30 DHS memorandum. Dkt. No. 4-2. The policy set out in the July 9 guidance largely mirrors the March 30 memorandum, but adds that, in cases where no diplomatic assurances exist, ICE will serve a "Notice of Removal" identifying the country of removal, translate the notice for the noncitizen, and "generally wait at least 24 hours following service ... before effectuating removal." *Id.* at 2. "In exigent circumstances[,]" however, ICE may, with proper approval, execute removal in as little as six hours after service. *Id.*

*Id.* (citation modified). Since *Kumar v. Wamsley*, 817 F. Supp. 3d 1059 (W.D. Wash. 2025), was issued, DHS asked the Supreme Court to stay the order issued by the district court in *D.V.D. Dep't of Homeland Sec. v. D.V.D.*, No. 26A406 (Sept. 24, 2026). On September 29, 2026, the Supreme Court granted the application for stay, treated the application as a petition for writ of certiorari, and granted the petition. *Dep't of Homeland Sec. v. D.V.D.*, No. 26A406 (Sep. 29, 2026), https://www.supremecourt.gov/qp/26-00426qp.pdf. The Court also directed the parties to brief the following issues: whether the district court had jurisdiction over the plaintiffs' claims; whether the district court had the authority to issue class-wide relief in light of 8 U.S.C. § 1252(f)(1); whether the government's third-country removal guidance is unlawful under 8 U. S. C. §1231(b), the Due Process Clause, or the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA")/Convention Against Torture ("CAT") and its implementing regulations; and "[s]uch other questions that the Government determines are appropriate for the proper disposition of the case." *Id.* The appeal does not affect the instant matter.

violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner argues that Respondents violated the Fifth Amendment by depriving her of due process when they detained her without affording her meaningful procedural safeguards, including the opportunity to invoke the procedures governing third-country removal. Dkt. 1 at 5–7; Dkt. 13 at 2–3.

In response, Respondents contend that they lawfully detain Petitioner pursuant to 8 U.S.C. § 1231(a)(6) and the Supreme Court's framework in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which expressly authorizes detention to effectuate removal in the reasonably foreseeable future after a final order of removal has been issued. Dkt. 9 at 5–6. However, Respondents' argument is inapposite. *Singh v. Noem*, No. 26-CV-0302-JLR, 2026 WL 879247, at *3 (W.D. Wash. Mar. 31, 2026) ("[W]here, as here, a noncitizen brings a habeas petition to challenge their detention as violative of due process, the Government's alleged basis for the Petitioner's detention is 'irrelevant[.]'" (quoting *Sarwari v. Wamsley*, 26-CV-00121-TL, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026))).

Petitioner challenges the process she has been afforded (or lack thereof), rather than the statutory authority of 8 U.S.C. § 1231(a)(6) or the framework of *Zadvydas*, 533 U.S. 678. Dkts. 1, 13. "Even when the Government believes that it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process." *Singh*, 2026 WL 879247, at *2 ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law" (citing *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))); *accord Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact

that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.”).

**A. The Court Retains Jurisdiction to Review the Instant Habeas Petition.**

As a preliminary matter, this Court finds that it retains jurisdiction to review such a challenge as the basis for Petitioner’s detention is Respondents’ efforts to effectuate Petitioner’s removal to a third country without affording Petitioner the required due process. Dkt. 9 at 3–4, 6. Courts have repeatedly found that a petitioner’s habeas challenge to a country-of-removal designation is not barred by 8 U.S.C. § 1252. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019) (finding that a habeas petitioner’s challenge to a country-of-removal designation was not barred by § 1252(a)(5) because ICE acted “outside of removal proceedings”); *Ibarra-Perez v. United States*, 154 F.4th 989, 997, 999 (9th Cir. 2025) (“[W]e have been clear that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders. …We have jurisdiction to review [petitioner’s] purely legal arguments challenging ICE’s removal to Mexico without providing any process that would have allowed him to present evidence supporting his fear of removal to that country.”); *Jennings v. Rodriguez*, 583 U.S. 281, 292–93 (2018) (finding § 1251(b)(9) does not present a jurisdictional bar where the noncitizen is not asking for review of an order of removal, not challenging the decision to detain them in the first place or to seek removal; and not challenging any part of the process by which their removability will be determined); *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that Courts retain jurisdiction over due process claims); *Garcia v. Noem*, No. 3:25-CV-06008-DGE, 2025 WL 3237502, at *3 (W.D. Wash. Nov. 20, 2025) (“§ 1252(b)(9) does not apply when a plaintiff brings a claim arising after completion of removal proceedings[.]”); *see also Folashade O. v. Schilling*, No. 26-CV-2705-

LMP-DTS, 2026 WL 1734877, at *4 n.10 (D. Minn. June 16, 2026) (finding the district court had jurisdiction to review petitioner's petition for writ of habeas corpus, including her claim that respondents unconstitutionally sought to remove her to a third country without providing her the opportunity to invoke the protections required by the third-country removal statute, FARRA, and CAT); *Martinez Harold-Vega v. Johnson*, No. 5:26-CV-04976-SPG (JDE), 2026 WL 2854701, at *4 (C.D. Cal. Sept. 22, 2026) (rejecting Respondents' argument that the Court lacked jurisdiction because "the Ninth Circuit found Section 1252(g) does not bar jurisdiction to review purely legal arguments challenging ICE's removal to a third country without providing any process that would have allowed the noncitizen to present evidence supporting his fear of removal to that country") (cleaned up).

Respondents have not offered any relevant authority that persuades this Court to reach an alternative conclusion.

**B. Respondents Have Failed to Provide Petitioner Due Process.**

While Respondents may believe they have authority to detain Petitioner to effectuate removal based on her final order of removal, they have failed to provide the process due to Petitioner before removal to a third country. *See* 8 U.S.C. § 1231(b)(3). Where the government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove the noncitizen to a third country, but in doing so, it must comply with the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009–11 (W.D. Wash. 2019); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1065 (W.D. Wash. Nov. 17, 2025) (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings").

//

To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Kumar*, 817 F. Supp. 3d at 1069; *Aden*, 409 F. Supp. at 1009 (finding that due process requires the Government to give a noncitizen "sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."); *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025) ("If a noncitizen claims fear of removal to a designated third country, courts in this district have repeatedly held that ICE must give the petitioner an opportunity to pursue a claim for withholding of deportation in reopened removal proceedings before an immigration judge.") (citation modified); *Gomez v. Mattos*, 817 F. Supp. 3d 1002, 1012 (D. Nev. 2025) ("The Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.").

In addition, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened ... because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Accordingly, the Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Here, Petitioner is subject to a final order of removal, but she has been granted withholding of removal to Benin. Dkt. 12-4 at 2. Respondents are pursuing Petitioner's third-country removal to Ghana, a country which is not listed on Petitioner's final order of removal nor addressed during Petitioner's removal proceedings. *Id.*; Dkt. 29 at 3 ("Petitioner's removal proceedings concerned Benin. They did not concern Ghana."). Petitioner has neither received an

individualized fear screening nor any individualized opportunity to challenge removal to Ghana, and Respondents have confirmed that she will not receive any additional process prior to her removal to Ghana. Dkt. 1 at 3–4; Dkt. 13 at 3; Dkt. 27 at 2, 9 ("[P]ursuant to the March 30, 2025 *Guidance Regarding Third Country Removals*, which remains DHS's policy at this time, [Petitioner] will not be referred for a fear screening."); Dkt. 11 at ¶ 9 ("ICE will follow the March 30th, 2025 memorandum of former DHS Secretary Kristi Noem, *Guidance Regarding Third Country Removals*, to effectuate the Petitioner's removal.").

Rather than provide Petitioner an individualized fear screening, Respondents contend that they have instead complied with their third-country removal policy, stating "[t]he Republic of Ghana provided diplomatic assurances that [noncitizens] removed from the United State [sic] pursuant to [their] arrangement will not be subjected to persecution or torture in Ghana nor in any country they may be further transferred to[,]" and that "the Department of State determined that these diplomatic assurances were credible and reliable." Dkt. 11 at ¶¶ 4–9; Dkt. 27 at 9. These blanket "assurances" fall considerably short of the process due to Petitioner. Even if credible, the generic statements upon which Respondents rely simply do not account for Petitioner's individualized circumstances. *Kumar*, 817 F. Supp. 3d at 1069–70; *cf. Aden*, 409 F. Supp. 3d at 1010–11.

"A number of courts in this [D]istrict have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca Del Cid v. Mullin*, No. 26-CV-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1199–1200 (W.D. Wash. 2025); *see also Abubaka v. Bondi*, No. 25-CV-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025) (citing cases); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025); *Rea-*

*Hernandez v. Bondi*, No. 25-CV-2609, 2026 WL 322874, at *9 (W.D. Wash. Feb. 6, 2026) ("Alarmingly, this policy provides that [i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures.") (citation modified); *Francisco Lorenzo v. Bondi*, No. 25-CV-2660, 2026 WL 237501, at *9 (W.D. Wash. Jan. 29, 2026) (finding that Respondents' third-country removal policy, as described in the July 9, 2025, memorandum, "simply do[es] not comport with due process"); *Escobar v. Chestnut*, No. 25-CV-1801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent.") (collecting cases). Under the circumstances of this case, the Court finds these decisions persuasive.

The test for determining whether process is sufficient is derived from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See*, *e.g.*, *Escobar*, 2025 WL 3687639, at *4. Under that framework, a court must consider: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, courts have continually recognized a noncitizen's private interest in freedom from imprisonment. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Moreover, Petitioner has a significant private interest in

avoiding removal to a country where she would face persecution. "This is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under § 1231(b)(3) or the Convention Against Torture receive such protection." *Ahmed S. v. Blanche*, No. 26-CV-2265-KMM-DLM, 2026 WL 2996562, at *5 (D. Minn. Oct. 6, 2026) (citation modified).

Second, "[t]he procedures involved here also carry with them a high risk of erroneous deprivation—that is, they present an unreasonable risk that a person in [Petitioner's] position would be removed to a destination the law forbids." *Id.* Generalized assurances from the government of the third-country destination cannot account for individual circumstances. *Cf. Aden*, 409 F. Supp. 3d at 1010 ("The Fifth Amendment requires that ICE provide a meaningful opportunity for petitioner's claim of fear to be heard. The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits *of his or her particular claim*.") (emphasis added).

Third, the regulations already require this very review in removal proceedings themselves. *Ahmed S.*, 2026 WL 2996562, at *7. "Respondents' burden of affording IJ review of Petitioner's negative fear determination is minimal, particularly … where the regulations provide such review in several other contexts." *Pineda v. Noem*, 833 F. Supp. 3d 593, 604 (E.D. Va. 2026). Here, the burden of providing these additional procedures to Petitioner is outweighed by the public's interest in preventing removal of noncitizens to countries where they are likely to face substantial harm as federal law prohibits. *Cf. Nguyen*, 796 F. Supp. at 703, 739 (considering the public interest in granting preliminary relief). Where no individualized process has been provided at all, the balance in this case weighs decidedly in Petitioner's favor. *Cf. Torres Ferrera v. Scott*, No. 2:26-CV-00583-TL, 2026 WL 776145, at *5 (W.D. Wash. Mar. 19, 2026) ("*[N]o*

*process* can never equal *due process*.") (emphasis in original); *see, e.g.*, *Ahmed S.*, 2026 WL 2996562, at *4–7.

Courts have found even minimal process to be insufficient. *Aden*, 409 F. Supp. 3d at 1010 (citing *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013)); *see also Portilla v. Warden of the Golden State Annex ICE Det. Facility*, No. 1:26-cv-00494-EPG-HC, 2026 WL 2339445, at *5 (E.D. Cal. Aug. 12, 2026) ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings." (quoting *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1140–41 (E.D. Cal. 2025))). As other courts have held, even "allowing the petitioner *to move to reopen* their immigration proceedings is not enough to satisfy Due Process—the Government must *actually reopen* proceedings so that the petitioner has a fair and adequate opportunity to be heard." *Arenado-Borges*, 2025 WL 3687518, at *6 (emphasis in original); *Aden*, 409 F. Supp. 3d at 1010–11.

Rather, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an IJ. *Le v. Bondi*, 824 F. Supp. 3d 1112, 1122–23 (W.D. Wash. 2026); *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*, 815 F. Supp. 3d at 1199–1200; *Nguyen*, 796 F. Supp. 3d at 727, 739.

Respondents fail to demonstrate how they have provided any individualized process whatsoever to Petitioner. Dkts. 9, 28. Respondents' actions are especially egregious where the record itself demonstrates Petitioner appears to have an individualized reason to fear removal to Ghana. Dkt. 12-2 at 5 (describing an incident in which a man was sent from Benin to kill

Petitioner while she was temporarily residing in Ghana). By denying Petitioner the ability to invoke the protections available to her before removal to a third country, Respondents have denied her constitutionally adequate process to effectuate her removal to Ghana. Accordingly, this Court finds that Respondents have violated Petitioner's right to due process and Petitioner's detention to effectuate removal to Ghana is unlawful unless or until the violation is cured.

## IV. RELIEF

Having determined that Petitioner is detained without being provided the process due to her, the Court now determines the appropriate remedy for her unlawful confinement that is premised on Respondents' promise that Petitioner will be imminently removed to Ghana. *See* 8 U.S.C. § 1231(a)(6). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)). When a court considers a due process claim, it may tailor relief to cure the specific issue that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Petitioner requests her immediate release, or, in the alternative, an order prohibiting Respondents from "removing Petitioner to Ghana unless and until they have afforded her the notice and meaningful opportunity to seek protection required by the Fifth Amendment, governing statutes, and applicable regulations[.]" Dkt. 26 at 7; Dkt. 1 at 10. "Petitioner's

principal request for relief [is] the opportunity to seek protection from her removal to Ghana through the procedures governing third-country removal." Dkt. 13 at 3.

Petitioner appears to be subject to detention pursuant to 8 U.S.C. § 1231(a)(6) and has been in custody since July 23, 2026. Dkt. 10 at ¶ 13. Under *Zadvydas*, Respondents cannot detain Petitioner indefinitely; but given the relatively short duration of her detention and the untested viability of her removal to Ghana, there is currently an insufficient basis for the Court to conclude that her detention pending removal is indefinite as Petitioner does not raise that claim. 533 U.S. at 682, 702. Under the circumstances here, the Court finds that a conditional writ requiring Respondents to provide necessary procedural protections to be the appropriate remedy here. Thus, the Court declines to order immediate release and instead enters the conditional writ as set forth in the conclusion below.

To comport with due process, Respondents must provide Petitioner with written notice of their intent to remove her to a third country and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen*, 796 F. Supp. 3d at 727 ("[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (citation modified); *H.J. v. Julio Hernandez*, No. 2:26-cv-02384-GJL, 2026 WL 2819962, at *6–8 (W.D. Wash. Sept. 21, 2026); *Kumar*, 817 F. Supp. 3d at 1074 (ordering similar relief).

//

The Court agrees with the assessment of this issue in *Aden,* 409 F. Supp. 3d at 1010:

> ICE's authority to remove a noncitizen to a country not specified in the immigration judge's order of removal is contingent on its compliance with § 1231(b): it therefore has an affirmative obligation to make a determination regarding a noncitizen's claim of fear before deporting him. Thus, both the due process claim and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. It has not done so in this case. Giving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—is not an adequate substitute for the process that is due in these circumstances. The importance of an asylum or withholding applicant's testimony cannot be overstated, and requiring petitioner to make a compelling and credible showing of fear of persecution through a declaration in support of a motion to reopen is not an adequate substitute.

*Id.* (citation modified).

Because Petitioner has stated she fears removal to Ghana, *see* Dkt. 27 at 6, Respondents must provide a reasonable fear interview to screen for Petitioner's fear of persecution and torture. If Petitioner is found to have a reasonable fear of removal, then Respondents must move to reopen Petitioner's removal proceedings to allow Petitioner to present to an IJ a full claim for relief under 8 U.S.C. § 1231(b)(3) and FARRA, including a claim for withholding of removal or deferral of removal under CAT. If Petitioner is not found to have such a fear, then Respondents must allow for a further fifteen days for Petitioner to file a motion to reopen her removal proceedings with the immigration court or Board of Immigration Appeals, as appropriate. Other courts, including at least one in this District, have ordered similar relief in third-country removal cases to remedy comparable due process violations. *Kumar*, 817 F. Supp. 3d at 1074; *see also Folashade O.*, 2026 WL 1734877, at *5 (collecting cases).

Should Respondents fail to provide Petitioner an individualized fear screening that comports with due process, continued immigration detention will lack a lawful constitutional basis. Respondents may not continue to detain Petitioner for the sole purpose of effectuating a

third-country removal after expressly refusing to provide the constitutionally required procedures that must precede that removal.

## V. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the Petition for writ of habeas corpus (Dkt. 1) and **ORDERS** as follows:

(1) Respondents **SHALL NOT** remove Petitioner to Ghana unless and until they have provided her notice and a meaningful opportunity to assert a fear-based claim before an immigration judge as designated below:

a. Respondents **SHALL provide** Petitioner with an individualized reasonable fear interview concerning Ghana **within ten days of this Order** unless the interview is continued at the Petitioner's request;

b. If Respondents determine that Petitioner states a reasonable fear of removal to Ghana, then Respondents **SHALL** move to reopen her removal proceedings for her to present a claim for asylum, withholding of removal, and/or protection under the Convention Against Torture before an immigration judge and **SHALL NOT** remove Petitioner to Ghana unless and until the immigration judge makes the required determination under § 1231(b)(3)(A);

c. If Respondents determine that Petitioner does not state a reasonable fear of removal to Ghana, then Respondents **SHALL** allow Petitioner fifteen days to file a motion to reopen her removal proceedings and **SHALL NOT** remove Petitioner to Ghana unless and until the proceedings are deemed administratively final;

d. If an individualized reasonable fear interview concerning Ghana is not provided within ten days of the date of this Order, or within a period of continuance requested by Petitioner, Respondents **SHALL release** Petitioner subject to reasonable conditions of supervised release **no later than the eleventh day after the date of this Order or the day following a period of continuance requested by Petitioner**;

(2) By **November 2, 2026**, Respondents **SHALL file** a declaration with the Court confirming that Petitioner received an individualized reasonable fear interview as ordered in Part V(1)(a)—and the results of that interview—or otherwise confirming Petitioners request for a continuance; and

(3) If the individualized reasonable fear interview is continued at Petitioner's request, Respondents **SHALL file** a supplemental declaration confirming

> that Petitioner received an individualized reasonable fear interview—and the results of that interview—**within two days of the date of the continuance**.

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 22nd day of October, 2026.

Grady J. Leupold
United States Magistrate Judge